IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PYONG OK WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-024 |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations of the Social | ) | |
| Security Administration, Performing the | ) | |
| Duties and Functions Not Reserved to the | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Pyong Ok Williams appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff applied for DIB in July of 2017, alleging a disability onset date of October 28, 2013. Tr. ("R."), pp. 159-60. Plaintiff's last insured date for purposes of the DIB application is December 31, 2018. R. 183. Plaintiff was fifty-nine years old on her alleged disability onset date. Id. Plaintiff applied for benefits based on allegations of stage three breast cancer and

neuropathy. R. 187. Plaintiff has a twelfth grade education and completed some specialized job training, trade, or vocational school at Augusta Tech. R. 188. Prior to her alleged disability, Plaintiff had accrued relevant work history as a payroll clerk, accountant, and cost accountant. R. 16, 188.

The Social Security Administration denied Plaintiff's applications initially, R. 67-75, and on reconsideration, R. 76-85. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 98-99, and the ALJ held a hearing on March 3, 2017. R. 22-66. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Mary L. Cornelius, M.S., a Vocational Expert ("VE"). Id. On March 29, 2017, the ALJ issued an unfavorable decision. R. 7-21.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 28, 2013, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*).

2. The claimant has the following severe impairments: chemotherapy-induced peripheral neuropathy and asthma (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with further limitation to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; no standing or walking over an aggregate of 2 hours in an 8 hour workday; no more than occasional stooping, balancing, crouching, kneeling, or climbing of stairs or ramps; no crawling or climbing of ladders, ropes or scaffolds; no exposure to high ambient noise environment greater than standard office noise; and no concentrated exposure to dust, fumes, gases, odors, extremes of humidity, heat or cold. Thus, the claimant is capable of performing past relevant work (20 C.F.R. § 404.1565).

> 5. Therefore, Plaintiff has not been under a disability, as defined in the Social Security Act, from October 28, 2013, through the date of the decision (20 C.F.R. § 404.1520(f)).

R. 22-28.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly: (1) weigh the opinion evidence in determining Plaintiff's RFC; and (2) develop the record. See doc. no. 12 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 13 ("Comm'r's Br.").

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence

to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.   DISCUSSION

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Nathan Jansen, D.O., when determining Plaintiff's RFC and failed to develop a full and fair record. Pl.'s Br., pp. 10-13. As explained below, the ALJ (1) properly considered Dr. Jansen's

4

medical opinion and (2) had sufficient information to render an informed decision. Therefore, neither of Plaintiff's arguments form a valid basis for reversal or remand.

**A.     The ALJ Properly Weighed Dr. Jansen's Medical Opinion**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).  "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).  Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records.  Lewis, 125 F.3d at 1440; see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

5

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists.  See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5).  However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review.  SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

Plaintiff argues the ALJ erred by giving little weight to Dr. Jansen's opinions Plaintiff is limited to occasional fine motor tasks and needs to lie down every half hour because:  (1) the ALJ did not cite another opinion to the contrary; and (2) medical sources in the record, including Dr. Jansen's treatment notes, cited continued neuropathy, pain, and fatigue.  Pl.'s Br. pp. 11-12.  The Court disagrees and finds no error.

### 1. Plaintiff's Treatment History With Dr. Jansen

On October 15, 2013, Dr. Jansen treated Plaintiff for the first time.  R. 336.  Plaintiff did not complain about pain or fatigue, noted no decrease in exercise tolerance, and stated she was active at work and with family.  R. 337.  On October 26, 2013, Plaintiff complained of neuropathy, and Dr. Jansen scheduled laboratory work to determine the cause.  R. 340.  On January 7, 2014, Plaintiff stated her neuropathy pain improved since she joined a local gym and has been more active.  R. 320-21.  Plaintiff stated the pain occurs primarily at night in her feet but was also present in her hands.  R. 321.  Dr. Jansen noted loss of vibratory

sensation in her right leg to knee level, decreased position and fine motor sensation bilaterally in her feet, and loss of vibratory sensation on the plantar and dorsal surface of her left leg. Id. Plaintiff stated she did not want anything for the pain, and Dr. Jansen released her without limitations. R. 322-23.

On March 17, 2014, Plaintiff complained of increased tiredness and lethargy, noting she was more tired than usual after doing simple household chores. R. 301. Dr. Jansen attributed Plaintiff's tiredness to hypothyroidism and increased her dosage of levothyroxine. R. 302. Plaintiff also described improvement in her lower extremity pain since starting aerobics. R. 301. Dr. Jansen noted Plaintiff does moderate exercise for thirty minutes most days of the week. R. 302.

On June 23, 2014, Plaintiff complained of increased pain from neuropathy. R. 282. Again, Plaintiff stated the pain predominantly occurs in her legs at night but can also be present in her hands. Id. Plaintiff stated she may have been prescribed gabapentin for pain in the past but stopped taking it because it made her drowsy. Id. Dr. Jansen noted sensory exam abnormalities; namely, decreased sensation of the plantar and dorsal regions of her foot during a monofilament wire test. R. 283. Dr. Jansen prescribed fenofibrate for her pain, indicating he would try low-dose amitriptyline if there was no improvement after one or two weeks, and released Plaintiff without limitations. R. 284.

On September 23, 2014, Plaintiff stated amitriptyline helped with her pain but she only took it periodically because it made her drowsy. R. 702. Plaintiff stated the pain in her legs was tolerated without difficulty. Id. Plaintiff did not complain of general tiredness or fatigue. R. 703. Dr. Jansen noted Plaintiff's workup regarding her neuropathy was "unremarkable" and observed no sensory exam abnormalities or decreased sensation in her

7

foot. R. 703-04. Dr. Jansen stated he would prescribe different medication for her pain if drowsiness from amitriptyline continued. R. 704. On September 30, 2014, Dr. Jansen noted Plaintiff's lab results returned with no finding of anemia and were otherwise normal. R. 700.

On November 6, 2014, Dr. Jansen completed a medical source statement for Plaintiff. R. 718-19. Dr. Jansen listed peripheral neuropathy secondary to chemotherapy treatment as Plaintiff's only impairment. R. 718. Dr. Jansen opined Plaintiff is limited in sitting and stooping and needs to avoid significant exposure to particular environmental conditions in a workplace. Id. Dr. Jansen stated Plaintiff could only occasionally lift or carry one to ten pounds of weight and could never carry more than ten pounds. Id. Dr. Jansen opined Plaintiff could never raise either arm over her shoulder and only occasionally use her hands for fine manipulation. Id. Finally, Dr. Jansen stated Plaintiff's pain was "moderately severe," she would need to lie down due to pain, fatigue, or another impairment for a few minutes every half-hour, and she would need to take unscheduled break periods. R. 719.

Finally, on January 15, 2015, Plaintiff denied pain except recurrent and periodic pain in her legs and occasional pain in her hands. R. 1276. Plaintiff stated the pain was worse at night and amitriptyline, which she took periodically at night, made her go to sleep. Id. Dr. Jansen stated an electromyogram showed only right planter median nerve dysfunction. Id. Plaintiff stated exercise and being active helped her symptoms and did not complain of general tiredness or fatigue. R. 1276-77. Dr. Jansen noted Plaintiff does moderate exercise for thirty minutes most days of the week. R. 1278. Dr. Jansen observed abnormal deep tendon reflexes, specifically "1/4" bilateral patellar reflex" and "2/4 brachil [sic]" reflex, but noted Plaintiff had "muscle strength 5/5 bilaterally." Id. Dr. Jansen stated her peripheral

neuropathy was likely secondary to chemotherapy but he would recheck for reversible causes. Id. Again, Plaintiff was released without limitations. R. 1279.

In his decision, the ALJ discussed Dr. Jansen's medical source statement, and gave little weight to Dr. Jansen's opinions Plaintiff is limited to occasional fine motor tasks and needs to lie down every half hour because the opinions are "inconsistent with the greater weight of the record" and "claimant's activities of daily living." R. 14.

### 2. Substantial Evidence Supports the Little Weight Given By the ALJ to Dr. Jansen's Opinion

Plaintiff argues the ALJ erred by giving Dr. Jansen's opinion little weight because the ALJ failed to cite another medical opinion in support and "many sources" noted Plaintiff suffered from neuropathy, pain, and fatigue. Pl.'s Br., pp. 11-12. However, an ALJ only needs to find a treating physician's opinion is unsupported by objective medical evidence, merely conclusory, or inconsistent with the physician's own medical records. Lewis, 125 F.3d at 1440. The ALJ was justified in giving Dr. Jansen's opinion little weight by properly determining the opinion was unsupported by objective medical evidence and inconsistent with his own medical records.

The ALJ's finding is supported by substantial evidence because Dr. Jansen's treatment notes do not indicate Plaintiff's pain affected her fine motor skills in her hands or caused her to need to lie down frequently. Indeed, Plaintiff commonly complained her pain was predominantly in her legs, not her hands, and occurred mostly at night. R. 282, 321, 1276. Furthermore, while Dr. Jansen noted loss of sensation in her legs and feet on January 7, 2014, and June 23, 2014, Plaintiff's neuropathy workup on September 23, 2014, was "unremarkable," and Dr. Jansen observed no abnormalities or decreased sensation in Plaintiff's foot. R. 283, 321, 703-04. Notably, the September 23, 2014 exam was the last

9

exam Dr. Jansen performed on Plaintiff before he completed the medical source statement. Plaintiff also reported exercising and remaining active minimized her pain and, on September 23, 2014, stated her leg pain was tolerated without difficulty. R. 301, 320-21, 702, 1276-77. In short, Dr. Jansen's treatment notes do not indicate Plaintiff's neuropathy pain was severe or Plaintiff's fine motor skills in her hands were limited.

Also Dr. Jansen's treatment notes are inconsistent with his opinion Plaintiff would need to lie down every thirty minutes. Plaintiff generally reported she maintained an active exercise schedule and did not complain about general fatigue. R. 302, 337, 703, 1276-77. On March 17, 2014, Plaintiff complained of increased tiredness and lethargy, which Dr. Jansen attributed to hypothyroidism and treated accordingly. R. 301-02. Plaintiff did not repeat these complaints during later treatments. Also, while Plaintiff complained amitriptyline made her drowsy, Plaintiff reported she only took it periodically at night. R. 702, 1276. Thus. Dr. Jansen's treatment notes do not support his opinion Plaintiff would need to lie down every thirty minutes at work.

Additionally, Plaintiff fails to cite any portion of the record supporting either of Dr. Jansen's discounted opinions. While other sources noted Plaintiff's neuropathy and pain, none of these sources indicate Plaintiff suffered from limitations in her fine motor skills as a result of the pain. Pl.'s Br, p. 11 (citing R. 399, 532-25 565, 727, 731, 1181, 1184 1252, 1269, 1272, 1276). Additionally, the sources Plaintiff cites in support of her fatigue do not suggest the level of limitation included in Dr. Jansen's opinion. Id. at 12 (citing 399, 486, 1050, 1057).

Finally, Plaintiff's activities of daily living are inconsistent with Dr. Jansen's opinion. As indicated above, Plaintiff maintained an active exercise schedule while she was treated by

Dr. Jansen, and Dr. Jansen reported on more than one occasion Plaintiff performed moderate exercise for thirty minutes a day most days of the week.  R. 302, 1278.  On May 18, 2018, Plaintiff further reported she reads, plays games, cooks, cleans, the house, and attends church.  R. 1467-68.  During the March 3, 2017 hearing, Plaintiff testified she still goes to the gym once or twice a week, volunteers at her church once a week, does grocery shopping, cooks, cleans, and does the laundry.  R. 33-36.

Accordingly, the ALJ's decision to give Dr. Jansen's opinions as to Plaintiff's fine motor skills and need to lie down every thirty minutes little weight is supported by substantial evidence because the opinions are inconsistent with Dr. Janson's treatment notes, the objective medical evidence of record, and Plaintiff's activities of daily living.  Phillips, 357 F.3d at 1241.

### B.     The ALJ's Decision was Based on a Full and Fair Record

Plaintiff also argues the ALJ erred when he failed to develop the record by contacting Dr. Jansen about his opinion, seeking another treating medical source statement, or ordering a consultative examination after determining portions of Dr. Jansen's opinion were inconsistent with the record.  Pl.'s Br., pp. 12-13.

A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim.  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  Larry v. Commissioner of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).  The regulations also provide that the ALJ may order a consultative examination when warranted.  See 20 C.F.R. § 416.917.  "It is reversible error for an ALJ not to order a

11

consultative examination when such an evaluation is necessary for him to make an informed decision." Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted). "However, there must be a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997). For a clear showing of prejudice, a plaintiff must show the record as a whole is incomplete or inadequate. Id.

The core of Plaintiff's argument is the ALJ erroneously substituted his own opinion for Dr. Jansen's opinion by finding it inconsistent with the record and Plaintiff's activities of daily living. See id. (citing Mepham v. Colvin, No. CV 315-046, 2016 WL 3675805, at *5 (S.D. Ga. July 6, 2016)). However, this is not a case where an ALJ has improperly substituted his opinion for that of a medical professional. The ALJ merely determined portions of Dr. Jansen's medical source statement were not supported by objective evidence of record, his own treatment notes, and the Plaintiff's activities of daily living, and discounted those portions of Dr. Jansen's opinion accordingly. As described above, an ALJ properly discounts a medical opinion when it is inconsistent with objective evidence. Lewis, 125 F.3d at 1440. Thus, the ALJ was not required to contact Dr. Jansen and allow him to explain his medical source statement prior to discounting a portion of his opinion.

Moreover, despite Plaintiff's contention, the ALJ did not need to obtain additional information by ordering a consultative examination or seeking a medical source statement from another treating physician to render an informed decision. The record consists of more than 1,000 pages and contains six years of Plaintiff's medical treatment notes. Furthermore, as Plaintiff points out, several medical sources in addition to Dr. Jansen cited Plaintiff's

12

complaints of pain, neuropathy, and fatigue.  Pl.'s Br., pp. 11-12.  However, none of the sources describe symptoms supporting the level of limitations found in Dr. Janson's medical source statement.  In short, Plaintiff has not shown the record is incomplete or inadequate as to her treatment history such that the ALJ was required to obtain additional information to make an informed decision.  Accordingly, the ALJ's decision is supported by substantial evidence.

### IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of December, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA